UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No.: 25-cr-219-KSH |
| v. | |
| **HECTOR VILLEGAS ÁLVAREZ**, | Hon. Katharine S. Hayden |
| Defendant. | |

### DEFENDANT HECTOR VILLEGAS ÁLVAREZ'S MOTIONS *IN LIMINE*

Defendant Hector Villegas Álvarez (hereinafter, "Mr. Villegas") hereby moves the Court *in limine* to (1) exclude certain medical records of Angelina McCune (Government Exhibits 113-114, 175-177), attached hereto as **Exhibits A-E**, filed under seal pursuant to D.E. 10 and L.R. 17);[1] (2) exclude certain medical records of Geraldo Ore (Government Exhibit 115), attached hereto as **Exhibit F**, filed under seal pursuant to D.E. 10 and L.R. 17); (3) preclude the government from using prejudicial or conclusory terms at trial; (4) preclude the introduction of Mr. Villegas' "A-File" (Government Exhibit 116), attached hereto as **Exhibit G**, filed under seal pursuant to D.E. 10 and L.R. 17); (5) preclude the introduction of evidence regarding Mr. Villegas' custody status (Government Exhibit 116 (Ex. G), and Government

---

[1] Mr. Villegas also files a motion to seal simultaneous to this filing.

Exhibits 117 & 118, attached hereto as **Exhibits H & I**, filed under seal pursuant to D.E. 10 and L.R. 17).[2] In support, Mr. Villegas states as follows:

### I. INTRODUCTION

In approximately two months, Mr. Villegas is facing trial for allegedly forcibly assaulting Deportation Officer Angelina McCune of the U.S. Department of Homeland Security, Immigration and Customs Enforcement while she was detaining him. The government further alleges that this forcible assault caused injury to Officer McCune, including a concussion and nasal fracture.

The defense expects that evidence at trial will demonstrate that the encounter in question began when immigration officers initiated a traffic stop. Mr. Villegas was approached by Deportation Officer Ore, who asked Mr. Villegas to identify himself and informed Mr. Villegas he was under arrest. Mr. Villegas exited in his vehicle and followed commands. Nevertheless, Officer McCune abruptly started tazing Mr. Villegas multiple times and then tackled a dazed Mr. Villegas from behind. The government alleges that when Officer McCune tackled Mr. Villegas from behind, he allegedly elbowed her, causing her a broken nose and concussion. At trial, the jury will be asked to determine if this alleged injury was caused by a forcible assault.

Of course, the government is entitled to an opportunity to attempt to prove its

---

[2] **Schedule A**, *infra*, lists the corresponding motion exhibits and government exhibit numbers for the Court's reference.

case against Mr. Villegas at trial. See *Musacchio v. United States*, 577 U.S. 237, 248 (2016). But it should not be allowed to do so by inflaming the jury with prejudicial, unconstitutional, and inadmissible evidence. Accordingly, Mr. Villegas moves to exclude the following, as set forth below.

    II.    **MOTION IN LIMINE TO EXCLUDE CERTAIN MEDICAL RECORDS OF ANGELINA MCCUNE (GOVERNMENT'S EXHIBITS 113–114, 175–177)**

Government's Exhibits 113–114 and 175–177 are medical records from three visits Officer Angelina McCune made to the hospital following Mr. Villegas Alvarez's arrest on February 23, 2025. Specifically, these exhibits include:

1. Exhibit 113: After Visit Summary from University Hospital Newark, February 23, 2025 (1 page)

2. Exhibit 114: After Visit Summary from Hackensack University Medical Center, February 24, 2025 (1 page)

3. Exhibit 175: Medical Records from Geisinger Community Medical Center, March 1, 2025 (214 pages)

4. Exhibit 176: Medical Records from Hackensack University Medical Center, February 24–25, 2025 (129 pages)

5. Exhibit 177: Medical Records from University Hospital Newark, February 23, 2025 (61 pages)

Mr. Villegas Alvarez objects to these portions of these exhibits and related evidence on several grounds, as described below.

    a.    **The References to "Assault" in the Records Should Be Redacted.**

The Court should order the government to redact any references to "assault" in the medical records under Federal Rules of Evidence 402, 403, 602, and 704. The

3

word "assault," or versions of it, appear throughout the records. For example, Exhibit 113, the "After Visit Summary" from University Hospital, lists "Assault" as one of Officer McCune's diagnoses. *See* Gov't Ex. 113 at 1. The discharge instructions in Exhibit 177, the medical records from University Hospital, state "███████████ ██████████████████████████████████████." Gov't Ex. 177 at 18. And Exhibits 175 and 176, the medical records from Officer McCune's subsequent hospital visits, have many similar references to assault. *See, e.g.,* Gov't Ex. 175 at 12 ("█████ ███████████████████████████████"); Gov't Ex. 176 at 10 ("██████████ ██████ █████████████████████████████████████████████████████ ████████."

These references to assault should be redacted for four independent reasons: (1) they are irrelevant; (2) they carry a substantial risk of confusing the issues and misleading the jury; (3) they were made by people who lacked direct knowledge of what happened; and (4) they improperly opine on an ultimate legal issue in the case. First, the fact that the doctors who treated Officer McCune believed she was assaulted in some medical or colloquial sense is not relevant to whether she was assaulted in the *legal* sense meant by 18 U.S.C. § 111. As a result, the references to assault in the medical records are irrelevant and should be excluded under Rule 402. *See* Fed R. Evid. 402.

The references to assault should also be excluded under Rule 403 because they are likely to "confus[e] the issues" and "mislead[] the jury." Fed. R. Evid. 403. The

4

term "assault," as used in Section 111, has a specific legal definition. *See, e.g., United States v. McCulligan*, 256 F.3d 97, 103 (3d Cir. 2001) (discussing caselaw defining simple assault under Section 111 as "a willful attempt to inflict injury upon the person of another" or "a threat to inflict injury upon the person of another, which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm"). Complicating matters further, Section 111 criminalizes three different types of assault: "simple assaults, other 'non-simple' assaults not involving a dangerous weapon or injury, and assaults that involve a dangerous weapon or cause injury." *Id.* at 102. It will be hard enough for the jury to understand and apply these legal definitions of assault without other, colloquial definitions being introduced into the case. But that is exactly what would happen if the Court were to admit the medical records in unredacted form: the jury would be exposed to numerous statements declaring that Officer McCune was "assaulted" and even diagnosed with "assault," but whose definition of "assault" is unknown and almost certainly different from the one the jury will be required to apply. There is a substantial risk these statements will confuse the jury by confusing it about the definition of assault or leading it to believe there has already been a conclusive determination that Officer McCune was assaulted within the meaning of Section 111, when in reality the doctors who were using the term meant something else.

Third, many of the references to assault in the medical records should be excluded under Rule 602 because they were made by doctors or other medical staff

5

with no personal knowledge of what happened on February 23, 2025. Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Importantly, this rule does not just apply to testimony at trial: "the personal knowledge foundation requirement of Rule 602 [also applies] to hearsay statements admissible as exceptions under Rules 803 and 804." *United States v. Ammar*, 714 F.2d 238, 254 (3d Cir. 1983); *see also* Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 6024 (2d ed. 2025). Although some of the references to assault in the medical records came from Officer McCune, many others appear to have come from the doctors or nurses treating her, including such statements as ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Gov't Ex. 177 at 18; Gov't Ex. 175 at 12. Because these statements were made by people without personal knowledge of the purported assault they were describing, they should be excluded under Rule 602.

Finally, the references to assault in the medical records should be excluded under Rule 704 because they improperly opine on an ultimate legal issue. "Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that 'embraces an ultimate issue to be decided by the trier of fact,' an expert witness is prohibited from rendering a legal opinion." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (quoting *United States v. Leo*, 941 F.2d 181, 195–96 (3d Cir. 1991)). "Such testimony is prohibited because it would usurp the District Court's

6

pivotal role in explaining the law to the jury." *Id*. Because assault is an element of Section 111, *see McCulligan*, 256 F.3d at 102; *United States v. Wolfname*, 835 F.3d 1214, 1220 (10th Cir. 2016), whether Officer McCune was assaulted is a question for the jury. Allowing the government to introduce statements declaring that Officer McCune was assaulted would usurp the jury's fact-finding role and this Court's role in instructing the jury on the assault element of the offense. And because assault under Section 111 has a specific *mens rea* requirement, *see McCulligan*, 256 F.3d at 103, introducing these statements would also violate the provision of Rule 704 that prohibits experts in a criminal case from "stat[ing] an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged," matters that are for "the trier of fact alone." Fed. R. Evid. 704(b).

For all these reasons, if the government is allowed to admit some or all of the medical records, it should first be required to redact any references to "assault" in the records.

        **b.    The References to "Pregnancy" in the Records Should Be Redacted.**

Finally, Government's Exhibits 113 and 177, the records from University Hospital in Newark, contain various references to the fact that Officer McCune was given a ███████████████████ test. *See, e.g.,* Gov't Ex. 113 at 1. Although Mr. Villegas Alvarez understands this was likely a normal precaution, and the records later clarify that Officer McCune was not pregnant, the defense is

concerned these references could confuse the jury or lead members to believe Officer McCune may have been pregnant at the time of the alleged assault. Because that belief would be both wrong and unfairly prejudicial to Mr. Villegas, these references should also be redacted from the medical records under Federal Rule of Evidence 403.

### III. MOTION TO EXCLUDE GOVERNMENT EXHIBIT 115 AND TESTIMONY RELATED TO ANY ALLEGED INJURIES OF OFFICER ORE

This case is about an alleged forcible assault of Officer McCune. The government has produced multiple records related to McCune's alleged injuries (as noted above) that it alleges were a result of Mr. Villegas forcibly and intentionally elbowing Officer McCune while she "performed a body lock around his hips from behind." Gov't Ex. 104. In support of this theory, the government has produced medical documentation and an expert report related to Officer McCune's alleged injuries.

However, the government has marked Exhibit 115, which appears to be a photograph of a single page of a multi-page document related to medical attention sought by Deportation Officer Gerado Ore. It is unclear how, if at all, the government plans to introduce this document at trial and under what theory of relevancy. In an abundance of caution, Mr. Villegas moves to exclude Exhibit 115 and any related testimony.

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable that in would be without the evidence; and (b) the fact is of consequence in

8

determining the action." Fed. R. Evid. 401. The charges against Mr. Villegas require the government to demonstrate (1) the defendant forcibly assaulted the person—Officer McCune—described in the indictment; (2) that Officer McCune was a federal officer performing an official duty; (3) the defendant's acts resulted in physical contact with Officer McCune, causing bodily injury. The indictment in this case alleges assault of "a Deportation Officer," and refers only to a singular person through the remaining allegations. In short, as far as the defense can tell, the government has not alleged a theory of guilt in this case that revolves around the injury of multiple officers. Thus, Exhibit 115 is not relevant to the element of the charge in the indictment and should be excluded. *See United States v. Clark*, 468 F. App'x 102, 104 (3d Cir. 2011) (affirming exclusion of evidence because it was not relevant to the elements of the offense).

Moreover, even if the Court were to find that alleged medical attention sought by Officer Ore is relevant, introduction of this exhibit fails balancing under Fed. R. Evid. 403. It is "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina,* 547 U.S. 319, 326 (2006). Here, introduction of Exhibit 115 risks confusion of the issues or misleading the jury regarding the elements of the offense as charged in the indictment and what the jury must eventually decide—whether Mr. Villegas forcibly assaulted Officer McCune. Accordingly, Mr. Villegas asks that the Court

exclude Exhibit 115 and any testimony related to alleged medical attention sought by Officer Ore.

### IV. THE GOVERNMENT SHOULD BE PRECLUDED FROM USING PREJUDICIAL OR CONCLUSORY TERMS

"[T]here is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)). In accordance with this presumption, Mr. Villegas requests the Court prohibit witness from the use of the terms "victim" and "assault," and any similar terms the Court might identify, that are prejudicial, conclusory, or reach ultimate issues. In addition to his motion *in limine, supra*, seeking redaction in medical records, Mr. Villegas also moves to have those terms redacted from any documents the government seeks to introduce at trial.

The jury ultimately must decide whether the events constituted an assault, and whether Officer McCune is a victim of the alleged assault. Testimony, argument, or evidence that uses those terms asks for legal conclusions by non-experts, invades the province of the jury, and should be excluded. *See* Fed. R. Evid. 701, 704. Even expert witnesses are prohibited from rendering a legal opinion to prevent usurping the Court's role in explaining the law to the jury and to avoid undue prejudice. *United States v. Xue*, 597 F. Supp. 3d 759 (E.D. Pa. 2022). *See United States v. Watson,* 260 F.3d 301, 309 (3rd Cir. 2001) ("the expert does not draw the ultimate inference or conclusion for the jury"). The Third Circuit has excluded "legal terms of art" from

expert testimony, reinforcing the prohibition against witnesses testifying to legal conclusions. *Id*. Other courts have likewise prevented witnesses from using legal terms for charged crimes for this reason.[3]

While the government likely will seek to prove at trial that Officer McCune is a "victim," or that Mr. Villegas forcibly "assaulted" her, those terms standing alone are highly prejudicial and conclusory. Courts in the Third Circuit have likewise granted in part similar motions on the use of the term "victim" at trial, based on the term being substantially more prejudicial than probative under Rule 403. *See, e.g.*, *United States v. Leroy*, No. 16-cr-243, 2017 WL 82498 (W.D. Pa. Jan. 10, 2017). Using these terms throughout the trial will condition the jury to think of the parties and facts in this way, whether the evidence supports such a conclusion or not. A trial infused with prejudicial terms that assume Mr. Villegas's guilt before the jury

---

[3] *See also, e.g.*, *United States v. Rodriguez-Adorno*, 695 F.3d 32, 39 (1st Cir. 2012) (holding agent's characterization of event as "carjacking" during carjacking prosecution was inadmissible lay opinion testimony as to the ultimate issue of defendant's culpability); *United States v. Gutierrez-Farias*, 294 F.3d 657, 662-64 (5th Cir. 2002) (finding agent's testimony about drug trafficking crosses the "borderline" into "forbidden opinion on the ultimate legal issue," but error was harmless); *United States v. Espino*, 32 F.3d 253, 257 (7th Cir. 1994) (holding that defendant should not have been asked to testify as to whether conduct constituted "conspiracy" because it called for improper opinion testimony by a lay witness about a legal term of art); *United States v. Baskes*, 649 F.2d 471, 478-79 (7th Cir. 1980) (holding district court properly restricted questions asking whether witnesses "unlawfully, knowingly, and willfully conspire[d]").

renders its verdict will no doubt render the jury's task to remain impartial as it weighs the evidence at trial unduly difficult and increases the risk of a conviction based on bias. The supposed helpfulness of this type of term is far outweighed by the unfair prejudice caused to Mr. Villegas. *See* Fed. R. Evid. 403. Mr. Villegas has the right to be presumed innocent, and testimony that uses these conclusory labels deprives Mr. Villegas of this right.

Similarly, Mr. Villegas moves in limine to exclude use of the words "detainee," "migrant," "alien," "illegal alien," "an illegal," or "illegals" (referring to the class of individuals not authorized to be present in the United States) during trial. Such words, especially in today's political climate, are highly prejudicial against Mr. Villegas and risk biasing the jury against Mr. Villegas. While the defense is willing to stipulate that Mr. Villegas had overstayed his visa in the United States, use of these terms should be excluded from trial.

Accordingly, Ms. Villegas requests the Court order the Government to refrain from using and instruct its witnesses to refrain from using the terms "victim," "assault," "detainee," "migrant," "alien," "illegal alien," "an illegal," or "illegals" and any similar terms the Court might identify, that are prejudicial, conclusory, or reach ultimate issues.

The same is true for any documents the government seeks to introduce at trial that have these terms which will not only draw the attention of the jury but also increase the risk of confusion and bias. Accordingly, should the government seek to

12

introduce any such documents, Mr. Villegas requests that such references be redacted.

### V. THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING MR. VILLEGAS' "A-FILE", EXHIBIT 116.

Mr. Villegas moves to exclude Exhibit 116, commonly referred to an "A-File." As noted above, the government does not need to prove that Mr. Villegas was undocumented as an element of the offense. In fact, Mr. Villegas' immigration status is completely irrelevant to the elements that the government must prove at trial. It is unclear for what purpose the government is seeking to admit 56 pages of information concerning Mr. Villegas' immigration status into evidence. Like any other federal case, revealing extraneous details of Mr. Villegas' immigration status and immigration related records could prejudice the jury against him, risking a jury verdict based not on the evidence, but prejudice. *See, e.g., Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 939 (8th Cir. 2013) (affirming the District Court's exclusion of any reference to the workers' immigration status in an employment dispute, because such references would "be substantially more prejudicial than probative under Rule 403.")[4] Accordingly, the defense moves to exclude Government Exhibit 116.

---

[4] *See also, e.g., Perez v. 1st United Funding, LLC*, No. 0:17-CV-62516-KMM, 2019 WL 13256773, at *2 (S.D. Fla. Jan. 3, 2019) ("Immigration status is also generally inadmissible under Federal Rule of Evidence 403 because it is substantially more prejudicial than probative if offered [] for general impeachment purposes.")

## VI. THE GOVERNMENT SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF MR. VILLEGAS' CUSTODY STATUS

The government has marked several exhibits which explicitly refer to Mr. Villegas' custody status including Government Exhibits 116 (A-File), 117 (Commissary and Trust Account Records), and 118 (ICE Medical Clearance for Custody Transfer). Each of these records, which directly refers to time Mr. Villegas has spent in criminal or immigration custody have no probative value and only seek to prejudice the jury against Mr. Villegas based on the fact that he has been held in custody pending trial. The Court should exclude their admission and references to Mr. Villegas' custody status at trial.

A defendant has a due process right to a trial free from evidence or circumstances that would unduly prejudice the jury against him or her. Over years of jurisprudence, this right has been explicated to include the right of the client to be dressed in civilian clothes if he is in custody at the time of trial, and if the client is restrained, that such restraint be hidden from the jury. *See Estelle v. Williams,* 425 U.S. 501, 504, (1976). Courts have further examined the prejudice imparted on the defendant when the defendant's custody status, either current or past, is revealed on the record before the jury at trial. In fact, the disclosure of a defendant's incarceration "may, in certain circumstances, violate a defendant's due process right to a fair trial." *United States v. Faulk,* 53 F. App'x 644, 647 (3d Cir. 2002). While some courts have held that "the mere utterance of the word [jail, prison, or arrest] does not, without regard to the context or circumstances, constitute reversible error *per se*" (*United*

14

*States v. Villanbona–Garnica*, 63 F.3d 1051, 1058 (11th Cir. 1995); *see also United States v. Atencio*, 435 F.3d 1222, 1237 (10th Cir. 2006) ("The rule of *Estelle* does not apply, to every mere utterance of the words [jail, prison, or arrest], without reference to context or circumstances."), repeated or constant visual or oral references to a defendant's custody status references may violate a defendant's due process rights.

The seminal, albeit non-precedential, case in the Third Circuit in this area appears to be *United States v. Faulk*. 53 F. App'x 644 (3d Cir. 2002). There, the defendant challenged a series of five questions asked by the prosecutor to a percipient witness that revealed that the defendant was in custody.[5] These questions were not objected to at the time of trial, and the Circuit reviewed whether this exchange was unduly prejudicial under plain error.

The Third Circuit found that "the prosecutor's brief (albeit repeated) mention of Faulk's imprisonment in a single short series of questions did not serve as a

---

[5] The questioning at issue proceeded as follows:
Q: But, you've talked to him [the defendant] while he's been incarcerated, right?
    A: I-
    Q: While he's been in prison?
    A: No.
    Q: He's never called you from prison?
    A: No.
    Q: You've never talked to him on the phone from prison?
    A: No.
    Q: Did you ever visit him in prison?
    A: No.
*Faulk*, 53 F. App'x at 647.

15

'constant reminder' to the jury of defendant's condition so as to impair the presumption of his innocence." *Faulk*, 53 F. App'x at 647–48. In making this finding, the Third Circuit agreed with the government who "concede[d] that the prosecutor's references to Faulk's imprisonment were ill-advised," by finding that "[t]he prosecutor's statements on this point were improper." *Id.* at 648. In sum, the Third Circuit found that five references to the defendant's detention were "improper" but did require a grant of a new trial under the plain error review standard.

The situation at bar is much more profound than the brief line of questioning in *Falk*. Although it is unclear how the government will seek to introduce these documents at trial and for what purpose, the permutations of possible attempts to admit all lead to the same place: impermissibly and repeatedly eliciting testimony that Mr. Villegas has spent time in immigration or federal custody.

Admission of the proposed exhibits for whatever purpose the government asserts further risks that the jury will consider them for an impermissible purpose, including inferring that because Mr. Villegas is or was in jail or immigration custody, he must be guilty. *See Faulk*, 53 F. App'x at 647. And, while the Court will of course take the usual precautions to cover defense table with a table skirt to conceal the shackles that Mr. Villegas may be wearing at trial, introducing the topic of Mr. Villegas' custody status to the jury may confuse the jury, distract from the matters ripe for their consideration, and cause them to speculate if Mr. Villegas is in custody, especially when they never see Mr. Villegas moving freely about the courtroom. *See*

16

*Estelle,* 425 U.S. at 504.  In sum, there is no apparent non-propensity reason to admit these documents whatsoever, and their admission runs the risk of prejudicing the jury against Mr. Villegas.

### VII.   NON-WAIVER OF FURTHER CHALLENGES

The government marked as a potential exhibits its entire production to the defense as of June 16, 2025. At the time of filing this motion, the defense moves i*n limine* as to those items which it has currently identified a challenge and which it believes the government might seek to enter into evidence—and not marked solely for refreshing recollection as in Government Exhibits  101, 102, 103, 104, 105, and 106 (ICE Use of Force Reports)—and for which it does not believe the government will affirmatively move *in limine*.  Further, it moves *in limine* for those items for which it requests redactions which, if ruled in advance by the Court, will streamline the presentation of evidence and maximize jury time. However, by so doing, the defense does not waive the right to timely challenge the admission of any of the exhibits marked by the government, or later marked, at the time the proponent of the exhibit seeks its admission.

### VIII.  CONCLUSION

For the foregoing reasons, Mr. Villegas respectfully requests that the Court grant the relief requested in this motion as follows:

(1) Exclude certain medical records of Angelina McCune  (Ex. A-E);

(2) exclude certain medical records of Geraldo Ore (Ex. F);

17

(3) preclude the government from using prejudicial or conclusory terms at trial;

(4) preclude the introduction of Mr. Villegas' "A-File" (Ex. G); and

(5) preclude the introduction of evidence regarding Mr. Villegas' custody status (Ex. G-I).

        Respectfully submitted,

        */s/ Laura C. Sayler*
        LAURA C. SAYLER
        Assistant Federal Public Defender
        1002 Broad Street
        Newark, NJ 07102
        609-900-5303
        Laura_Sayler@fd.org

        */s/ Tatiana S. L. Nnaji*
        TATIANA S. L. NNAJI
        Assistant Federal Public Defender
        1002 Broad Street
        Newark, NJ 07102
        (973) 645-4492
        Tatiana_Nnaji@fd.org

        *Counsel for Mr. Villegas*

## **Schedule A**

| Def. M. Ex. | Gov't Ex. No. | Description |
|---|---|---|
| A | 113 | Angelina McCune After Visit Summary from University Hospital Newark, February 23, 2025 |
| B | 114 | Angelina McCune After Visit Summary from Hackensack University Medical Center, February 24, 2025 |
| C | 175 | Angelina McCune Medical Records from Geisinger Community Medical Center, March 1, 2025 |
| D | 176 | Angelina McCune Medical Records from Hackensack University Medical Center, February 24–25, 2025 |
| E | 177 | Angelina McCune Medical Records from University Hospital Newark, February 23, 2025 |
| F | 115 | Geraldo Ore After Visit Summary from University Hospital Newark, February 23, 2025 |
| G | 116 | Hector Villegas' A-File |
| H | 117 | Commissary and Trust Account Records |
| I | 118 | ICE Medical Clearance for Custody Transfer |

## CERTIFICATE OF SERVICE

I, Laura C. Sayler, hereby certify that I caused a copy of the foregoing motion to be served via email and the Notice of Docketing Activity generated by the District of New Jersey's electronic filing system, upon:

> George Brandley
> Ariel Douek
> Assistant United States Attorneys
> United States Attorney's Office
> 970 Broad Street
> Newark, NJ 07102

simultaneous to the filing of this motion.

/s/ *Laura C. Sayler*
LAURA C. SAYLER
Assistant Federal Public Defender
1002 Broad Street
Newark, NJ 07102
609-900-5303
Laura_Sayler@fd.org

/s/ *Tatiana S. L. Nnaji*
TATIANA S. L. NNAJI
Assistant Federal Public Defender
1002 Broad Street
Newark, NJ 07102
(973) 645-4492
Tatiana_Nnaji@fd.org

*Counsel for Mr. Villegas*